## Case No. 3,078.

### In re COMSTOCK et al.

[3 Sawy. 218; 11 N. B. R. 169; 7 Chi. Leg. News, 126.][1]

District Court, D. Oregon. Dec. 7, 1874.

FOREIGN CORPORATION, ACTS OF, WHEN VOID — ESTOPPEL IN PAIS.

1. A statute of Oregon provides that "a foreign corporation doing business in the state, must duly execute" a power of attorney, appointing an agent upon whom all process may be served in suits against such corporation. Held, that such a corporation before complying with said act, had no power to contract or sue in the state, and that the act was prohibitory and anything done by the corporation contrary to it, was illegal and void.

[Cited in Northwestern Mut. Life Ins. Co. v. Overholt, Case No. 10,338; Same v. Elliott, 5 Fed. 227. Approved in Semple v. Bank of British Columbia, Case No. 12,659. Distinguished in Orange Nat. Bank v. Traver, 7 Fed. 147; Oregonian Ry. Co. v. Oregon Ry. & Nav. Co., 23 Fed. 237. Cited, in brief, in Cooper Manuf'g Co. v. Ferguson, 113 U. S. 733. 5 Sup. Ct. 739.]

2. The doctrine of estoppel in pais does not extend so far as to enable a person or corporation to do in effect what is forbidden by law, or what they are otherwise incapable of doing, and therefore a party to a contract with a foreign corporation made in violation of the above mentioned act, is not estopped to show its illegality for the purpose of preventing a recovery upon it.

[Cited in Spare v. Home Mut. Ins. Co., 15 Fed. 712. Distinguished in Oregonian Ry. Co. v. Oregon Ry. & Nav. Co., 23 Fed. 237.]

Objection to proof of debt.—On September 20, 1874, the Bank of British Columbia filed an amended proof of debt against the estate of C. B. Comstock & Co., for the sum of $6,620.88. On September 26, the assignee filed an objection to such amended proof to the effect that such bank was a foreign corporation, and had never complied with sections 8 and 9 of the act of the state, of October 24, 1864, requiring a foreign corporation before transacting business in this state, to appoint an attorney upon whom all process necessary to give jurisdiction over such corporations to the courts of this state, may be served.

Counsel for the bank moves to strike out the objection, because: 1. Said objection is improperly pleaded with objections "which are substantial in character." 2. The assignee is estopped to deny that the bank is a foreign corporation authorized to do business in this state, for the reason that it appears the bankrupts "so dealt and traded with it;" and 3. Said Comstock & Co. borrowed the money of the bank "which is the subject of

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 7 Chi. Leg. News, 126, contains only a partial report.]

this proof" and "thereby did acknowledge that the bank was a foreign corporation authorized under the laws of the state of Oregon to do business in said state, and therefore the assignee of said Comstock & Co. cannot now be heard to deny the same."

The first point made in support of the motion was not argued.

[For denial of a prior motion to strike out objections by the assignee to the proof of debt, see Case No. 3,077, next preceding.]

William H. Effinger, for the creditor, cited 2 N. B. R. 131 [In re Boutelle, Case No.1,705;] 2 Pars. Cont. 798, 799, note; 19 N. Y. 484; 3 Sandf. 170; 13 Am. Law Reg. (N. S.) 610 [Union Mut. Life Ins. Co. v. McMillen, 24 Ohio, 67]; 14 Ind. 90.

William Strong, for the assignee, cited [Bank of Augusta v. Earle] 13 Pet. [38 U. S.] 588; [Paul v. Virginia] 8 Wall. [75 U. S.] 180; 2 Paine, 516; [Warren Manuf'g Co. v. Ætna, Case No. 17,206]; 8 Wend. 480; 11 Ohio St. 191; Potter, Dwar. St. 222; Herm. Estop. §§ 540, 571.

DEADY, District Judge. On the argument it was admitted by counsel for the assignee, that he stood in the same relation to the matter as the bankrupts, and could not be heard to make this objection unless they could. Without expressing an opinion upon this proposition, it is assumed for the purposes of this case that such is the law.

It was also admitted that the bank is a foreign corporation, empowered by its charter to loan money and collect the same within this state, so far as the laws thereof permit.

Two questions appear to arise in the case: 1. Does the Oregon statute prohibit the transaction of business therein by a foreign corporation until its requirements are complied with? 2. Is the assignee estopped to show a want of compliance by the bank with the statute because the bankrupts were parties to the transaction alleged to have been done in violation of it?

The existence of the foreign corporation styled the Bank of British Columbia, is admitted by the assignee. But it is denied that such corporation has the power to transact business in this state, except by its consent, and then only upon the terms of such consent; and it is claimed that a transaction in violation of such terms is illegal and void for want of power in the corporation.

A foreign corporation has no existence beyond the limits of the sovereignty which created it. As was said in Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 538: "It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty."

Yet by the comity of nations the existence

of a foreign corporation will be recognized in other countries, and if not prejudicial to their interests or repugnant to their policy it will be permitted to transact business therein. In Story's Conflict of Laws (section 38), it is said: "In the silence of any positive rule, affirming or denying or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy or prejudicial to its interests."

The doctrine is thus stated by Mr. Justice Field in Paul v. Virginia, 8 Wall. [75 U. S.] 181: "The corporation being the mere creature of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in Bank of Augusta v. Earle, 'it must dwell in the place of its creation and cannot migrate to another sovereignty.' The recognition of its existence even by other states, and the enforcement of its contracts made therein depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." See, also, Lafayette Ins. Co. v. French, 18 How. [59 U. S.] 407; Ducat v. City of Chicago, 10 Wall. [77 U. S.] 410.

The bank then has no power to make a contract within this state, without its permission or assent. If the state is silent on the subject, by the comity of nations, its permission is presumed, unless it would be contrary to its policy or interest. But the state has spoken on the subject and given its consent to the transaction of business within its jurisdiction by the bank, not absolutely, but upon a condition or a limitation. This condition or limitation is found in the first clause of section 8 of the act aforesaid, which provides that "a foreign corporation before transacting business in the state, must duly execute and acknowledge a power of attorney and cause the same to be recorded in the county clerk's office of each county where it has a resident agent."

The state having this right to permit the bank to do business within its limits or not, with or without terms, has seen proper, for the security of its citizens, to require the execution and record of this power of attorney before the transaction of such business. The purpose of this requirement as disclosed in section 9 of the act, is to thereby secure the appointment of an attorney authorized to receive service of process for the bank, so as to enable the citizens or inhabitants of Oregon who may do business here with it, to sue it in the courts of the state, and thereby avoid the delay and expense, which would often be tantamount to a denial of justice, of following it into the courts of the foreign jurisdiction where it was created.

It follows, of course, from these premises, that the bank had no power to contract in the state until it had complied with the terms upon which the permission to do business was granted. It was required to perform the condition before it transacted business. From the passage of the act of 1864, supra, the assent of the state which was implied by the comity of nations was expressly qualified, so as to be in effect as follows: "The Bank of British Columbia is permitted to transact business in this state, but before doing so it must execute and record a power of attorney," etc.

Whilst it is manifest to the most ordinary observation that it was the intention of the legislature to permit the transaction of business in this state by a foreign corporation only upon the terms provided in the act, yet as it contains no provision imposing a specific penalty for neglect to appoint an attorney as required, or authorizing a proceeding by the state against such corporation for illegal exercise of corporate powers therein, unless the appointment of an attorney is held to be a condition precedent to its right to do business in the state, the act is nugatory.

But it is said that this statute is directory, and therefore the acts of the foreign corporation done in disregard of it are not illegal and void. It is the duty of a court to give effect to the intention of the legislature as far as practicable, and such intention should be ascertained from the words used in the statute and the subject matter to which it relates. The words of this act are certainly mandatory in form. Before transacting any business the corporation must appoint an attorney. Language could not make it plainer. The purpose of the act is apparent. As has been said, it is to secure the people of the state the right to sue the foreign corporation in the courts of the state; but unless the attorney is appointed before the business is transacted it will not be attained. In Rex v. Loxdale, 1 Burrows, 447, Lord Mansfield laid down the rule that whether a statute is mandatory or not, depends upon whether the thing directed to be done is the essence of the thing required. Now the appointment of an attorney is the very essence of the thing required in this case. In fact, nothing else is required, and without this the statute would be utterly inoperative.

This act, being mandatory, is therefore a prohibition against the transaction of business by the bank in this state without first complying with its terms, and as a necessary consequence all acts done in violation of it are illegal and void. The legal effect of the act is the same as if it read: It shall be unlawful for any foreign corporation to transact business in this state before appointing an attorney, etc.

In Springfield Bank v. Merrick, 14 Mass. 324, it was held that when a statute prohibited banking corporations of that state from receiving or negotiating the bills of banks not so incorporated, a promissory note payable in such bills to a banking corporation of Massachusetts was void and no action could be maintained upon it by the payee.

In Russell v. De Grand, 15 Mass. 37, it was held that a promissory note given for the premium on a policy of insurance on a vessel bound on a voyage prohibited by the laws of the United States, was void.

In Wheeler v. Russell, 17 Mass. 280, it was held that a promissory note given in payment for shingles sold contrary to a statute requiring them to be surveyed before offered for sale was void. In delivering the opinion of the court, the chief justice said: "No principle of law is better settled than that no action will lie upon a contract made in violation of a statute or of a principle of the common law."

In White v. Franklin Bank, 22 Pick. 181, it was held, that when upon the making of a deposit in a bank the depositor received a certificate in which it was stated that the money was to remain on deposit for a certain time, and a statute provided that no bank should make or issue any certificate or contract for the payment of money at a future day certain, such certificate was issued in violation of such statute and as against the bank illegal and void.

In Belding v. Pitkin, 2 Caines, 149, Thompson, J., said, "It is a first principle, and not to be touched, that a contract, in order to be binding, must be lawful." In Shiffner v. Gordon, 12 East, 304, Lord Ellenborough laid it down as a settled rule, "that when a contract which is illegal, remains to be executed, the court will not assist either party, in an action to recover for the non-execution of it."

In Bank of U. S. v. Owens, 2 Pet. [27 U. S.] 538, the court held that a contract contrary to a clause in the act incorporating the bank, which forbid it to take a greater interest than six per cent., but did not declare such contract void, was nevertheless illegal and void. In answer to the question, "whether such contracts are void in law, upon general principles," the court say: "The answer would seem to be plain and obvious, that no court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country; how can they, then, become auxil-iary to the consummations of violation of law?"

In Harris v. Runnels, 12 How. [53 U. S.] 83, Mr. Justice Wayne says: "The object of all law is to repress vice and to promote the general welfare of society; and it does not give its assistance to a person to enforce a demand, originating in his breach or violation of its principles and enactments. Contracts in violation of statutes are void; and they are so, whether the consideration to be performed, or the act to be done, be a violation of the statute." And again (page 84), he says: "When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void." Now, this statute is manifestly made "to promote the general welfare" of the people of this state. It is silent as to the consequences of its violation, and therefore the general rule applies —"a contract in contravention of it is void."

The following cases arose under statutes similar in purpose to the act of this state, and they all hold that a contract in contravention of the statute is illegal and void, unless the contrary is provided.

In Williams v. Cheney, 3 Gray, 222, it was held that a promissory note given for the premium of insurance to a foreign insurance company which had not complied with the statutes of Massachusetts upon that subject was void in the hands of the company. In Jones v. Smith, Id. 501, in a like case, it was said by the court, Metcalf, J.: "It was essential to the validity of the contract of insurance, which was the consideration of this note, that the insurance company should previously have complied with the provisions of the statutes of the commonwealth." This ruling was followed in Roche v. Ladd, 1 Allen, 441, in which, according to the syllabus of the case, the court, Hoar, J., held that "a note given for the premium upon a policy of insurance issued in violation of Stat. 1856, c. 252, concerning insurance companies, is invalid." In National Ins. Co. v. Pursell, 10 Allen, 232, it was held by the court, Hoar, J., that a contract of insurance with a foreign company in violation of the following enactment: "Every foreign insurance company before doing business in this state shall, in writing, appoint a citizen thereof, resident therein, a general agent, upon whom all lawful processes against the company may be served," was void. This statute is substantially the same as the Oregon act.

In Rising Sun Ins. Co. v. Slaughter, 20 Ind. 520, it was held that a contract of insurance made with a foreign insurance company, contrary to the statute of Indiana, was void.

In Cincinnati Mut. Health Assur. Co. v. Rosenthal, 55 Ill. 90, it was held that a contract of insurance with a foreign company made in violation of the law of Illinois was void. The statute in that case provided that it should not be lawful for foreign insurance companies to do business in that state, with-

out first procuring a certificate of authority from the auditor of the state. In the course of the opinion, the court (page 91), say: "When the legislature prohibits an act or declares that it shall be unlawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void. To hold otherwise, would be to give the person or corporation, or individual, the same rights in enforcing prohibited contracts, as the good citizen who respects and conforms to the law. To permit such contracts to be enforced, if not offering a premium to violate a law, it certainly withdraws a large portion of the fear that deters men from defying the law. To do so, places the person who violates the law on an equal footing with those who strictly observe its requirements. That this contract is absolutely void as to appellee, we entertain no doubt."

In this case, on behalf of the insurance company, it was contended that as the act imposed a penalty upon the agent for doing business contrary to it, it thereby appeared that the legislature did not intend to make the contract void. After disposing of this objection, the court (page 92) say: "Had no penalty been provided, no one would have, for a moment, hesitated to say that the note was, under this law, utterly void." In the Oregon act there is no penalty, nothing but the unqualified command or prohibition, which has universally been held to render invalid all acts done contrary to it.

In Aetna Ins. Co. v. Harvey, 11 Wis. 395, it was held that no action could be maintained by a foreign insurance company upon a note given for a premium of insurance, where the company had neglected to comply with the statute of Wisconsin, which provided that it should not be lawful for any such company to transact business in the state without first having filed a statement of its affairs and condition with the secretary of state. In the course of the opinion the court (page 396) say: "The sole question therefore presented in the case is as to the effect of such non-compliance upon the contract, and the note sued on. It was claimed for the plaintiff in error, that inasmuch as the statute does not say that any policy issued or note taken in violation of its provisions should be void, that therefore they should not be so held. And that the only effect of the law would be to render the agent liable to prosecution for violating it or to an action for damages. But we do not see how this position can be sustained in view of the well-established rule of law that a contract made in violation of a statute is void, and that courts will never lend aid to its enforcement."

Upon these authorities, as well as upon the plain reason of the matter, I think there can be no doubt but that the Oregon act prohibited the making of the contract by the bank, which is here sought to be enforced, and therefore, as against it, it is illegal—unlawful—against law—and void. Is the assignee estopped to show the invalidity of this contract because the bankrupts were parties to the transaction? I do not think the authorities cited by counsel for the bank upon this question are in point. They are Methodist Episcopal Union Church v. Pickett, 19 N. Y. 484, and Palmer v. Lawrence, 3 Sandf. 170. In the latter case the court say: "That a defendant who has contracted with a corporation de facto, is never permitted to allege any defect in its organization, as affecting its capacity to contract or sue; but that all such objections, if valid, are only available on behalf of the sovereign power of the state." In the former one the rule is stated thus: "The rule established by law as well as reason is, that parties recognizing the existence of corporations by dealing with them, have no right to object to any irregularity in their organization or any subsequent abuse of their powers, not connected with such dealing. As long as these are overlooked or tolerated by the state, it is not for individuals to call them in question."

In this case it is admitted that the bank is a corporation, but a foreign one. No defect or irregularity in its organization is sought to be alleged or any subsequent abuse of its powers. But on the other hand, it is alleged and shown: 1. That as to this transaction it was not a corporation at all—not even a corporation de facto, and was therefore utterly without power to contract with Comstock & Co. 2. That if it was a corporation existing by the comity of nations, in this state, it was by the state expressly prohibited from making this contract when and as it did, and therefore the same is illegal and void.

This foreign corporation having no power to do business in this state, except by the consent of the state, and consent having been given upon a condition precedent, which was never performed, the power to make this contract was never in the corporation. So far as it was concerned the act was ultra vires.

The doctrine of estoppel in pa's has never been carried so far as to prevent a party from showing that a corporation, even if it be one de jure, had not the power to do a particular thing, or that it was done in violation of a statute. When, in a given case, it appears there is a corporation de facto acting under a law which gives power to do the act in question, the party dealing with such a corporation so as to recognize its existence, is therefore estopped from alleging any irregularities in its organization with a view of showing that such act is illegal. But where the objection is a want of power in the corporation, and not a defect in its organization, the case is different. For instance, a corporation formed under the

laws of Oregon for the purpose of navigating the Wallamet river would have no power to engage in the manufacture of shoes, and if it did so its acts would be illegal. No one would be estopped to allege the fact whenever it became material. To do so would only be to deny its existence as a corporation to manufacture shoes, and as to this it would be neither a corporation de facto nor de jure. Again, if such a corporation was forbidden by statute to carry Indians on its boats, it could not make or enforce a contract for that purpose, and no one would be estopped from alleging the fact in bar of an action by the corporation for the passage money.

In Russell v. De Grand, supra, the voyage upon which the vessel was insured being an illegal one, the defendant, though a party to the agreement, was permitted to show its illegality to defeat a recovery upon it. So in the cases above cited, arising under the laws of Massachusetts, Indiana, Illinois and Wisconsin, concerning foreign insurance companies doing business in those states, the defendants, although parties to the transactions, were allowed to show that they were contrary to law and void. The reason of the rule is apparent and satisfactory. The maintenance of the public policy of a state, as manifested by its legislation, is of much more importance than the real or purposed equities of the parties to an illegal transaction, and therefore they are not estopped to show such illegality for the purpose of preventing the enforcement of a contract in opposition to such policy. Otherwise the public law and policy would be at the mercy of individual interest and caprice.

In 2 Pars, Cont. (5th Ed.) 799, it is said: "It must be obvious, however, that the doctrine of estoppel can go no further than to preclude a party from denying that he has done that which he has power to do;" and with like reason the converse of this proposition must be true—a party is not thereby precluded from denying that another has made a contract which he had no power to make or was prohibited from making, although he may have been a party to such illegal contract. In note w to the text of Pars. on Cont., supra, it is said: "A corporation may show its incapacity for a certain contract or course of action." "There cannot be an estoppel to show a violation of a statute, even to the prejudice of an innocent party." Steadman v. Duhamel, 1 C. B. 888. "Legal incapacity cannot be removed by fraudulent representation, nor can there be an estoppel involved in the act to which the incapacity relates, that can take away that incapacity." Keen v. Coleman, 39 Pa. St. 299.

In Lowell v. Daniels, 2 Gray, 161, it was held that a married woman was not estopped to show that her deed, which upon its face appeared to have been made when she was feme sole was in fact made when she was

covert and therefore void. In the course of the opinion, Thomas, J. (page 169), says: "This doctrine of estoppel in pais would seem to be stated broadly enough, when it is said that such estoppel is as effectual as the deed of the party. To say that one may, by acts in the country, by admission, by concealment or by silence, in effect do what could not be done by deed, would be practically to dispense with all the limitations the law has imposed upon the capacity of infants or married women to alienate their estates." To the same effect, in the case of an infant, is Brown v. McCune, 5 Sandf. 224. In the same way, to allow this corporation, by means of an alleged estoppel, which grows out of the very act prohibited, to indirectly do an act for which it had neither capacity nor right, would be practically to dispense with the limitation which the state has imposed upon its power of doing business therein.

On this occasion I do not wish to be understood as expressing any opinion upon the question whether this contract or transaction is void as against the assignee, or whether, in this respect, it comes within the rule laid down by Comyns, and cited with approbation in White v. Franklin Bank, supra, which allows an action in disaffirmance of an illegal contract for the purpose of preventing "the defendant from retaining the benefit which he derived" therefrom.

The objection to the proof of debt is well taken, and the motion to strike out is denied with costs. I also suggest that this question ought to have been made by demurrer to the objection.

[NOTE. For a subsequent decision denying the right of the bank to appear by counsel at an examination before the register, see Case No. 3,080.]