OREGONIAN RY. CO., Limited, *v.* OREGON RY. & NAV. CO.

*(Circuit Court, D. Oregon.　March 18, 1885.)*

1. CORPORATION—ESTOPPEL TO DENY CORPORATE EXISTENCE OR POWER.
    A person contracting with an ostensible corporation to do an act not prohibited by law, is estopped, in an action by said corporation on said contract, to deny the existence of the corporation, or its power to enter into such contract.
2. SAME—IN ABATEMENT OR BAR.
    The want of corporate existence may be pleaded in abatement or bar: but the want of capacity to sue in a particular case must be pleaded in abatement.
3. SAME—FOREIGN RAILWAY CORPORATIONS.
    By the act of October 21, 1878, (Sess. Laws, 95,) foreign railway corporations, for the purpose of constructing and operating railways in this state, are placed on the footing of domestic corporations.
4. SAME—THE OREGONIAN RAILWAY COMPANY.
    By the act of October 22, 1880, (Sess. Laws, 56,) this body was recognized as an existing corporation, lawfully engaged in the construction and operation of a railway in this state, from Portland to the head of the Wallamet valley, with the power to dispose of the same by lease or otherwise.
5. SAME—ULTRA VIRES.
    In an action against a corporation on a contract made by it, the corporation is not estopped to show that such contract was beyond its power to make.
6. SAME—OREGON CORPORATIONS, POWER OF.
    The Oregon corporation act of October 11, 1862, (Laws Or. 524,) authorizes three or more persons to form a corporation to engage "in any lawful enterprise, business, pursuit, or occupation;" and this includes the power to buy and sell or lease a railway.
7. SAME—ESTOPPEL—EXECUTED CONTRACT.
    The contract of a corporation, though invalid for want of power in the corporation to make it, may, if not illegal, be enforced against such corporation, where it has had the benefit of the consideration therefor; but a covenant to pay the rent reserved on a lease six months in advance, is not such a case. The consideration for such a promise is the future use and occupation of the property, and not the past one.
8. SAME—POWER OF DIRECTORS AND SHAREHOLDERS.
    The corporate powers of a corporation, formed under the law of this state, are vested in the directors; and the validity of their acts is not affected by the assent or dissent of the shareholders; and the powers of the latter are limited to the matters which concern the internal organization of the corporation.

9. SAME—SUBSCRIPTION TO CAPITAL STOCK.

    A subscription to the capital stock of a corporation is thereby pledged to the use or maintenance of the purposes of its organization, as specified in its articles, and may be applied to such of them as the directors shall determine.

    Action on Covenant in Lease to Recover Rent.

    *John W. Whalley* and *William B. Gilbert*, for plaintiff.

    *Cyrus Dolph* and *Charles B. Bellinger*, for defendant.

    *James C. Carter* also submitted a *written* brief for defendant.

    DEADY, J.  This action is brought by the plaintiff, a corporation alleged to have been formed in Great Britain under the "Companies Act of 1862," against the defendant, a corporation formed under the Oregon corporation act of 1862, to recover the sum of $68,131, alleged to be due the plaintiff on a lease of its railway, in Oregon, commonly called the "Narrow Gauge" road, for the half year commencing May 15, 1884.  The case was before this court in December last, on a motion to strike out the second amended answer of the defendant as "frivolous and immaterial," and for judgment on the complaint, which was denied, for the reasons then given.  22 FED. REP. 245.  At the same time the defendant had leave to file a third amended answer, containing two additional defenses.

    It appears from the amended complaint, filed on August 15, 1884, that the plaintiff became a corporation on April 30, 1880, by certain persons making and delivering for registry, under the companies act aforesaid, a "Memorandum of Association" and "Articles of Association," as therein alleged and set forth, with a registered office at Dundee, in Scotland, and power, among other things, to own, purchase, construct, operate, lease, and sell any railway in Oregon; that the defendant became a corporation under the Oregon act aforesaid on June 13, 1879, by certain persons making and filing articles of incorporation as therein alleged and set forth, with its principal place of business at Portland, in Oregon, and power, among other things, "to purchase or consolidate with, or lease or operate and maintain, on such terms as may be agreed upon," any railway in Oregon; that on August 1, 1881, the plaintiff was the owner of a certain railway in Oregon, and then demised the same to the defendant, by an instrument in writing, for the term of 96 years, for and upon a yearly rent of 28,000 pounds sterling, which rent the defendant thereby expressly agreed to pay the plaintiff in half-yearly installments in advance, and that the defendant, by its proper officers, duly executed said instrument,—they being first thereunto duly authorized by a vote of the directors; and that the defendant thereupon entered into the possession of said railway and operated the same, but has failed and refused to pay the installment of rent falling due on May 15, 1884.

    It is also stated in the complaint that on said last-mentioned date the defendant, pretending that neither party to said lease was authorized to execute the same, offered to restore the demised property to the plaintiff, but not in as good a condition as when received by the

defendant, which offer the plaintiff refused to accept; and thereupon, to prevent the loss and injury that might result from suddenly discontinuing the operation of the road, it was agreed between the plaintiff and defendant that the latter should retain the possession thereof, and continue to operate the same, for a period of six months thereafter, during which time this action was commenced, to-wit, on June 28th; but neither such agreement, nor the action of either party thereunder, was to in any way prejudice its claim or contention as to the validity of said lease, or affect its rights in the premises. By the amended answer now filed, as well as in the former one, the defendant admits that it is a corporation, formed under the laws of Oregon, and that its president and assistant secretary signed the writing aforesaid, and affixed thereto the corporate seal, in pursuance of a resolution of its directors, as alleged in the complaint; that in pursuance of said writing it entered into the possession of said railway, and operated the same and paid the rent therefor, as therein provided, until May 15, 1884, when it offered to return the same to the plaintiff, which offer was declined, and that it has since retained the possession thereof only under a special agreement with the plaintiff, as above stated; that the said companies act of 1862 is correctly set forth in the amended complaint, and that it comprises all the law of Great Britain touching the power and authority of corporations created or existing under the laws thereof; and denies—

(1) That the defendant is or ever was a corporation formed or existing under the companies act of 1862, or otherwise, or at all; (2) that neither said companies act, nor any other law of Great Britain, confers on the plaintiff the power to lease said railway; (3) knowledge or information sufficient to form a belief, (a) as to whether a memorandum or articles of association were made and delivered for registry in pursuance of said companies act or at all, (b) or as to whether the plaintiff has a registered office at Dundee, in Scotland; (4) that the plaintiff is or ever was authorized to own, purchase, construct, operate, lease, or sell any railway in Oregon; (5) that either the plaintiff or defendant ever had the power or authority to execute said instrument in writing or any indenture for the leasing of said railway, or that the stockholders of the defendant ever authorized or assented thereto, and that said "pretended lease was and is unauthorized and void," and that any sum of money is due the plaintiff from the defendant; and avers "that it has fully paid the rental provided for in said pretended lease" for the period during which it held possession of said railway thereunder, to-wit, for the term ending May 14, 1884.

The further defenses contained in the answer are briefly these:

(1) The railways which "the defendant was and is organized to construct and operate, and the *termini* of which were specified in its articles of association," are east of Portland, and do not embrace the railway alleged to have been demised to the defendant, nor any one to the south of said city, and that said railway forms no part of and has no "near connection" with the said roads of the defendant. (2) That prior to the execution of said pretended lease "the capital of the defendant had been contributed and applied in the construction and equipment" of railways, the *termini* of which are specified in its articles of association, and which have "no near connection" with the one mentioned in said lease; and that said lease was never authorized or as-

sented to by the stockholders of the defendant, and was a wholly unauthorized attempt by the officers thereof "to divert and subject the capital of defendant to a wholly new object and enterprise not contemplated when said capital was contributed and expended."

The plaintiff demurs to this answer:

(1) To so much thereof as denies the corporate existence or due organization of the plaintiff, or its power to make the contract herein sued on, for that the defendent ought not to be allowed or heard to say or allege the same contrary to its deed of August 1, 1881, as aforesaid; (2) to so much thereof as denies the power and authority of the defendant to make said contract, for that the same does not constitute a defense; and (3) to the first and second special defenses therein, for that "the new matter therein set up" does not constitute a defense.

The plaintiff also moves to strike out certain portions of the answer, as follows:

(1) The admission that the defendant is and was a corporation under the laws of Oregon, coupled with the denial that it ever had the power to purchase or lease a railway in Oregon, because the admission is redundant, and the denial sham and frivolous; (2) the admission that the defendant entered into possession of the railway under the alleged lease, coupled with the denial that the possession has been held thereunder since May 15, 1884; (3) the denial that at the time the defendant offered to restore the road to the plaintiff, it was not in as good condition as when received by the defendant, because the same are frivolous and irrelevant; and (4) "the rest and residue" thereof, not hereinbefore asked to be stricken out or included in the demurrer thereto, because the same is irrelevant.

The demurrer and motion were argued by counsel and submitted together.

This is substantially an action on the covenant of the defendant, contained in the lease, to pay the rent therein reserved, and its liability thereon does not depend on its use or occupation of the property. *Mills* v. *Auriol*, 1 Smith, Lead. Cas. 910. Therefore the allegations in the pleadings concerning the special agreement under which the defendant has operated the road since May 15, 1884, are immaterial and not relevant to the controversy involved in the action. And the same may be said of the allegations concerning the plaintiff's compliance with the laws of this state concerning foreign corporations doing business herein, as there are no laws on the subject applicable to the plaintiff. *Oregon & W. T. & I. Co.* v. *Rathbun*, 5 Sawy. 32.

When the case was before the court on the motion to strike out the answer, counsel for the plaintiff made the point that the denial of the plaintiff's corporate existence was a plea in abatement, and therefore waived by being pleaded with matter to the merits. But the court, admitting the rule, held that the matter was pleaded in bar, as it might be, and refused to strike it out. 22 FED. REP. 248. In the brief now filed in the case, counsel returns to the argument, and insists that this denial of the corporate existence is a plea in abatement; citing *Conrad* v. *Atlantic Ins. Co.* 1 Pet. 450, where it is said

that a plea to the merits admits the capacity of the plaintiff to sue, and that a want of corporate capacity should be taken advantage of by a plea in abatement. But the capacity of the plaintiff to sue is not all that is involved in a denial of its corporate existence.

In *Society, etc.,* v. *Pawlet,* 4 Pet. 501, the court, in considering the question whether the plaintiffs had a right to hold land, and therefore to maintain an action for the possession thereof, says:

"No plea in abatement has been filed, denying the capacity of the plaintiff to sue, and no special plea in abatement or bar that there is no such corpo-'ration as stated in the writ. * * * If the defendant meant to have insisted on the want of corporate capacity in the plaintiffs to sue, it should have been insisted upon by a special plea in abatement or bar."

A corporation may exist for many purposes and yet not have capacity to sue in a particular case, and a plea in abatement is the proper mode of taking advantage of that fact; but the defense of a want of corporate existence goes further, and may be pleaded either in abatement or bar. But the latter is the most effective, and unless the matter is specially pleaded, as in abatement, it will be considered in bar or to the merits.

· The demurrer to the answer raises three questions:

(1) Is the defendant estopped to deny the corporate existence and due organization of the plaintiff, or its power to enter into the contract sued on? (2) was the defendant authorized to enter into this contract? and (3) is the new matter contained in the two special defenses, or either of them, a bar to the action?

For the plaintiff it is contended that the first two of these questions must be answered in the affirmative, and the last one in the negative. The argument is that the defendant, having contracted with the plaintiff, as a corporation existing under the laws of Great Britain, by the corporate name of "The Oregonian Railway Company, Limited," for the lease of its railway, is now estopped to deny such corporate existence, or the power to make the contract in question.

When this case was under consideration before, it was said by the court, (22 FED. REP. 249 :)

"The law is well settled that a person who contracts with an *apparent* corporation, as such, is estopped, when sued on such contract, to say that the plaintiff had no corporate existence or power to make such contract. A corporation, like an individual, when sued on a contract, may set up as a defense to the action its want of power or capacity to make such contract; but the party with whom it contracts cannot set up such want of power or capacity as a defense to an action by the corporation for a breach thereof. And the reason of the distinction is that legal disability, as in the case of a minor, is a defense personal to the party who is under it, and cannot be taken advantage of by another." Citing *Cowell* v. *Springs Co.* 100 U. S. 61; Bigelow, Estop. (3d Ed.) 464, 465.

But counsel for the defendant now question the soundness of the rule laid down in Bigelow, *supra,* that legal disability can only be availed of by the party who labors under it, and cites *Bank of Mich-*

*igan* v. *Niles*, Walk. Ch. (Mich.) 99; *Ogdensburg, etc., Co.* v. *Vermont, etc., Co.* 6 Thomp. & C. (N. Y.) 488; and *Middlesex R. Co.* v. *Boston, etc., Co.* 115 Mass. 347, to the contrary.   The first case is not produced, but only a citation from it, in Mor. Corp., where it is cited (section 87) in support of the proposition, "A corporation cannot be compelled by legal process to do an act unauthorized by its charter," which is a very different thing from the purpose for which it is cited here.   The case appears to have been a suit for specific performance of a contract for the sale of real property, which was probably not merely void as being *ultra vires* the plaintiff corporation, but actually illegal, because prohibited by its charter.

The second is not in point, for the plaintiff corporation brought the suit to determine the validity of its lease to the defendant, and invoked the judgment of the court thereon.   The demurrer to the complaint was sustained at the special term of the supreme court; and the decision of the court at the general term, which is cited, is only to the effect that the plaintiff had not ratified the lease by accepting rent thereon pending the appeal from the order sustaining the demurrer to its complaint; and for the very good reason that if the lease was *ultra vires* because the corporation had no power to make it, it could not be ratified.   And the last case is wider still of the mark. A horse railway was leased by a corporation, and an action was brought by the assignee of the lessee against the lessor for money for repairs; claiming that, by the terms of the lease, the latter was bound for one-half of such expense.   The defendant corporation set up the invalidity of the lease, because of its want of power to make it, and the court sustained the objection, and gave judgment accordingly.

Two cases decided in this court (*In re Comstock*, 3 Sawy. 218, and *Semple* v. *Bank*, 5 Sawy. 88) are also cited to show that the legal disability of a corporation to make a contract may be set up as a defense in bar of an action thereon by such corporation.   But the act or contract of the foreign corporation, the validity of which was contested in these cases, was not only unauthorized in this state, but was absolutely prohibited therein, and therefore illegal; and this, without any reference to the power or capacity of the corporation in the country of its formation and domicile.   The same may be said of the cases *Rochester Ins. Co.* v. *Martin*, 13 Minn. 59, (Gil. 54;) *Farmers', etc., Bank* v. *Baldwin*, 23 Minn. 198; and *Bank* v. *Pierson*, 24 Minn. 140, cited by counsel for the defendant for the same purpose.

When it appears that the existence of a corporation, or the exercise of a particular power by it, is prohibited by statute or the common law, in my judgment any one who has entered into a contract with such corporation may plead the fact of the prohibition to exist or make the contract in question as a defense to an action thereon.   In such case the contract is not only unauthorized, but is illegal and contrary to public policy.   As was said by this court in *Re Comstock*, 3 Sawy. 218:

"No one is estopped to show that an act upon which a party claims a right is illegal simply because he was a party to it, even *in pari delicto*. If the matter concerned the parties to the transaction alone, the rule might be otherwise. But the interest of society, in whose behalf the act is prohibited, is paramount to private equities."

But where the law authorizes the formation and existence of the alleged corporation, with power to make the contract in question, then a party thereto ought not and cannot be heard, in an action thereon by such corporation, to deny its due formation or legal existence, with the power to make said contract.

Now, in this case, it appears by section 6 of the law of Great Britain, called the "Companies Act of 1862," that "any seven or more persons, associated *for any lawful purpose*, may, by subscribing their names to a memorandum of association, and otherwise complying with the requisitions of the act in respect of registration, form an incorporated company, with or without limited liability." Under this law the plaintiff might have been incorporated for "any lawful purpose." Nothing appearing to the contrary, a purpose to construct, purchase, own, operate, or lease a railway is as lawful as a purpose to engage in the manufacture or sale of any of the common necessaries of life. And it was and is at liberty, under the comity of nations, and until the legislature shall prohibit it, to pursue such purpose or exercise such powers in Oregon. True, it could not acquire the right of way over another's property by appropriation or condemnation, as a domestic corporation may do, unless specially authorized by the legislature. But it might do so with the consent of the owner, and the result would be the same. There is no mystery or monopoly in the railway business in Oregon. Any natural person, or corporation formed for that purpose, may, if he or it has or can obtain the right of way, construct and operate a railway between any points in this state and dispose of the same as freely and absolutely as if it were a steam-boat or mill.

It follows that the defendant, having taken a lease of this railway from the plaintiff, by its corporate name of "The Oregonian Railway Company, Limited," is estopped, in this action on its covenant in such lease to pay the rent reserved therein, to deny the corporate existence or due organization of the plaintiff, or its power to make such lease. After not a little confusion and uncertainty on the subject, this, in my judgment, is the final conclusion reached by the courts and text writers; and the justice and expediency of the rule has secured it a place in the draught of that well known and considered work, "The Civil Code of the State of New York," in these apt and plain words:

"Sec. 382. One who assumes an obligation to an *ostensible* corporation, as such, cannot resist the obligation on the ground that there was in fact no such corporation, until that fact has been adjudged in a direct proceeding for that purpose."

But by the act of October 21, 1878, (Sess. Laws, 95,) this corporation was placed on the footing of a domestic corporation in Oregon. That act provides "that any foreign corporation incorporated for the purpose of constructing, or constructing and operating, or for the purpose of or with the power of acquiring and operating, any railway, \* \* \* shall, on compliance with the laws of this state for the regulation of foreign corporations transacting business therein, have the same rights, powers, and privileges" as a domestic corporation formed for such purpose, and no more. The effect of this act is to make the plaintiff in some respects an Oregon corporation. Its existence, power, and capacity are still derived from and may be measured by the law of Great Britain, and the terms of its organization thereunder. But in the exercise of this capacity and power as owner, builder, or operator of a railway in this state, it comes under and is subject to the regulations and limitations of the Oregon corporation act, in the case of domestic corporations of like character and purpose. It may be admitted, then, that if by the law of this state a domestic railway corporation is prohibited from leasing its road, a foreign corporation owning a railway herein would be under the same disability.

However, by the act of October 22, 1880, (Sess. Laws, 56,) entitled "An act to grant the Oregonian Railway Company, Limited, the right of way and station grounds over the state lands, and terminal facilities upon the public grounds at the city of Portland," the plaintiff was directly recognized as an existing corporation lawfully engaged in the construction and operation of a railway in Oregon, from "Portland to the head of the Wallamet valley," and as such there was granted to it "and to its assigns, the owners and operators" of said railway, certain valuable "rights, privileges, easements, and property," as suggested in the title thereof. The effect of this act is clearly to establish, so far as this state and this court is concerned, the legal right of the plaintiff to construct, own, and operate this road, and in my judgment to dispose of it, either absolutely or for a term of years. *Society, etc.,* v. *Pawlet,* 4 Pet. 501. The grant therein contained is made to the plaintiff and its "assigns;" while a proviso in section 1 declares—

"That the said Oregonian Railway Company, Limited, or its assigns, shall have no power to sell, convey, or assign the premises or rights hereby granted, or any part or parcel thereof, to any person, persons, firm, or corporation, save only with and as a part and parcel of and as appurtenant to the railway now built and owned by said company, and now in process of construction by it."

Plainly this implies that the plaintiff had the power to assign its road,—dispose of it,—and might also assign or dispose of "the premises and rights" then granted to it, in connection therewith, but not otherwise.

Had the defendant the power to make this contract? is the next question raised on this demurrer, though it should properly have been

made by a demurrer to the complaint. The denial in the answer, of the power of the defendant in this respect, does not controvert any fact in the complaint, and is nothing but a conclusion of law or a denial of one. But the question, however raised, is to be tried by the constitution and laws of the state, and the defendant's articles of incorporation thereunder. The constitution (art. 11, § 2) provides:

"Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested or corporate rights."

On October 11, 1862, the legislature passed the first act in pursuance of this provision of the constitution, (Laws Or. 524,) which, with some comparatively unimportant amendments, has continued in force ever since. So far as I know, it is the next one in point of time to the British companies act of August of the same year, in which the subject of the formation and purpose of corporations is substantially divested of all exclusiveness and restraint, and put on the practical plane that a corporation is essentially nothing but a partnership, endowed with the capacity of acting as a single person under a particular name, and therefore that any and all persons should be allowed to incorporate themselves for the prosecution or transaction of any enterprise, business, pursuit, or occupation, not prohibited to individuals or partnerships. Accordingly, this act provides (section 1) that any three or more persons may incorporate themselves "for the purpose of engaging in any lawful enterprise, business, pursuit, or occupation," in the manner provided therein. All that is required is to make and file articles of incorporation specifying, (1) the name and duration of the corporation; (2) the enterprise, business, pursuit, or occupation in which it proposes to engage; (3) the place of its principal office; (4) the amount of its stock and the value of each share thereof; and, (5) if it is formed for the purpose of navigating any water, or building a bridge, canal, or road, the *termini* of such navigation, canal, or road, or the site of said bridge.

Subject to the provisions and limitations of the act, these articles of association are the charter of the corporation, and in the prosecution of its undertaking, and the management and disposition of its property, it is not subject to any other restraint than that which the law may impose in the case of natural persons in like circumstances. Whatever is not generally forbidden by the law of the land may be undertaken by a corporation thus formed for the purpose. Exclusive privileges are not allowed to any one; and the only policy indicated by the act is to promote the transaction of all kinds of business by means of corporations to be formed and dissolved at the pleasure of those particularly interested. Any number of corporations may be formed for the same purpose and at the same place; for instance, to keep a school, a store, a tavern, or to build and operate a steam-boat or railway between the same points. Nor is a corporation formed

ORUGH

under this act under any obligation to the public to maintain its existence, or carry on its corporate enterprise or business, any longer than the shareholders or a majority of them may think desirable. Whenever a majority of these, for any reason, vote to disincorporate, the life of the corporation is at an end, except that it may continue to exist, for the period of five years thereafter, for the purpose of winding up its affairs, including a final disposition of its corporate property, be the same a railway or a fish-wheel. Laws Or. p. 528, § 19; Sess. Laws, 1878, p. 91, § 2. In short, as was lately said by a distinguished jurist, in a brief for this defendant, in a case pending in the United States circuit court for the southern district of New York: "The Oregon system may be succinctly defined as free trade in corporations and free corporations."

In the consideration of the question as to the validity of a lease of corporate property made by a corporation formed under this system, the case of *Thomas* v. *Railroad Co.* 101 U. S. 71, so much relied on by the defendant, is in some respects altogether inapplicable. That was a case of a corporation created by a special act of the legislature of New Jersey, to build and operate a certain railway. The court held that the power to lease the road, not being specially given by the act of incorporation, nor fairly implied from anything contained therein, the contract of the corporation to that effect was *ultra vires* and void. In delivering the opinion of the court Mr. Justice MILLER says:

"Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

This rule is of universal application, and applies to a corporation formed under the law of Oregon as well as New Jersey. The articles of association, together with the corporation act under which they are made, constitute the charter of an Oregon corporation, and any act done by such corporation, not expressly or by fair implication authorized thereby, is *ultra vires* and void. It was also said, in the course of the opinion, that the contract of the New Jersey corporation was one "forbidden by public policy," and therefore beyond its power to make.

Whatever a corporation is "forbidden" to do, either directly by statute, or by a public policy fairly indicated by or deducible from the legislation of a state or country or the decisions of its courts, or both, is, of course, beyond its power to do. In such case the act is not only beyond the power of the corporation, and therefore invalid, but it is prohibited, and therefore illegal, and incapable of ratification, and any one dealing with the corporation is not estopped to allege and show such illegality. But the public policy on the subject of leasing railways in a state where corporations are not permitted for the purpose of constructing or operating them, except when created by a special act of the legislature for the construction or operation of a road be-

tween certain points, may be and manifestly is very different from that of a state like Oregon, where any number of corporations may be formed by the voluntary association of individuals, to build and operate railways when and where they think best, with power to disincorporate and dispose of their property at their own pleasure. And so, on this point, I do not regard the case of *Thomas* v. *Railroad Co.* applicable here.

The right of the defendant to make the defense of *ultra vires* as against the plaintiff, notwithstanding the express provision in its articles authorizing it to lease and operate any railway in Oregon, is already conceded in this opinion, upon the authority of Bigelow, Estop. (3d Ed.) 466. But the authorities are not uniform on the subject. And see Field, Corp. § 386. Here, it is admitted that the defendant held itself out to the world as a corporation organized to lease and operate any railway in Oregon. Such was the specification in its articles of the power and purpose, among others, of its organization. By this defense of *ultra vires* the defendant does not question the legality of an act done by its directors without apparent authority, or upon a doubtful or questionable construction of its articles, but it seeks to repudiate an act done by them within the plain letter and purpose of a particular power deliberately asserted and assumed by its corporators in the execution of its articles, and to which every one of its shareholders, it must be presumed, thereafter gave his unqualified assent. It must be admitted that a sense of justice cannot be invoked in favor of such a defense. It must therefore stand or fall on the decision of the naked legal question, whether the defendant was authorized in its formation to assume as it did the power to lease this or any other railway in Oregon.

The decision of this question involves the inquiry whether the taking a lease of a railway and a covenant to pay the rent reserved therein was an unlawful act in this state at the formation of the defendant corporation and at the date of this lease. Whatever "enterprise, business, pursuit, or occupation" was then lawful, the defendant might undertake in its articles to accomplish or engage in. There never was any legislative or judicial action in this state, except in one particular, to be hereafter noticed, indicating that such a transaction is unlawful or contrary to public policy. To take a lease of a railway and operate it, is in itself as lawful and meritorious an act as to construct one. No one would question the right of a natural person to do such an act. And whatever any one may do as an individual, any three or more persons may do as a corporation, unless restrained by some provision of law applicable to corporations only.

The corporation act of this state, as originally passed, contained a clause, (section 20,) inserted on its passage through the senate at the instance of interested parties, declaring that no corporation formed or created under it or other statute of the state for the purpose of navigating any water of this state, should ever " purchase, lease, or

in any way control" any road built by any other corporation formed under such act. This prohibition, it was well understood, was aimed at the Oregon Steam Navigation Company, a corporation then existing under a special act of the territorial legislature, and soon afterwards incorporated under the corporation act, in pursuance of section 18 thereof, and the predecessor of the defendant herein, and intended to prevent it from controlling any road that might be built on the bank of the Columbia, between Portland and the Dalles, and particularly around the Cascades of the Columbia, for the purpose of preventing competition with its steam-boats. This is the only restraint on the power of corporations in this respect that ever crept into the legislation of Oregon; and the rational and legal inference from the premises is that all leases of roads taken by a corporation formed under the act, except the kind thereby specially prohibited, are permitted.

But this is not all. By the act of October 18, 1878, (Sess. Laws, 59,) said section 20 was repealed and re-enacted, so as to omit the restraining clause; and since then there has been no indication of any purpose on the part of the state to restrain or limit the power of corporations in this respect. The idea of such restraint is also incompatible with the provision of the corporation act (section 17) that, in effect, authorizes a railway corporation to terminate its existence at its option, and dispose of its road. No natural persons, unless incorporated, are likely to purchase such property, and if there was any implied prohibition against the one corporation from becoming a purchaser, the right given to the other to sell would be so far rendered nugatory. The power to dispose of a road must include the power to lease; and the power to buy, the power to take a lease. So, by the act of October 22, 1880, *supra,* the right of the plaintiff herein to assign its road—to dispose of the same by sale or lease—is recognized; but if a corporation could not be formed or exist under the law of Oregon with power to buy the same or take a lease thereof, the *jus disponendi* of the former would be comparatively worthless.

Counsel for the plaintiff also makes the further point that this is an executed contract, and therefore the defendant is estopped to allege its invalidity in this action. It is well established that a contract, not tainted with illegality, but merely invalid for want of power in the corporation making it, may be enforced against such corporation when it has received or had the benefit of the consideration therefor. Bigelow, Estop. (3d Ed.) 574, 575; Field, Corp. § 263. But this contract does not come within that category. The defendant corporation could not set up the invalidity of this contract as a defense to an action for the rent of the property during a period that it had the use and benefit of the same. But this action is brought on a contract to pay rent in advance, and not for past use and occupation. The consideration for the covenant or promise to pay this installment of rent is not the past but the future use of the property. The contract to pay is therefore executory; and the same may

be said of every other installment of rent provided for in the contract. The liability to pay it arises out of the covenant to do so, and the consideration for this is the future use and occupation of the property for a corresponding period. The case of *Thomas* v. *Railroad Co., supra,* 86, is exactly in point on this question.

The effect of the two special defenses will now be considered. They deserve but little attention, for they are both utterly bad. It makes no sort of difference whether the railway leased from the plaintiff had any "near connection" with the roads whose *termini* are specified in the defendant's articles or not. Those roads it took the power to construct and own; but it also took the power to lease any other railway in Oregon, whether "so near or yet so far" from such roads. As between the plaintiff and the defendant, the directors of the latter were the sole judges of the propriety or expediency of taking this lease, and the assent or the dissent of the shareholders was altogether immaterial. They were powerless in the premises, and could neither prevent, authorize, nor ratify it. This does not, of course, question the right of the shareholders to invoke the aid of a court *to prevent* the directors from making a contract which, though legal, may be improvident or considered an abuse of their trust.

But the power of a corporation formed under the corporation act of this state, as to its relations with third persons, is vested in and exercised by the directors. The power of the shareholders is limited to a few matters concerning its internal affairs, namely, the election of directors, the increasing of the capital stock, the adding to the powers and purposes of the corporation, and the authorizing its dissolution. Nor is it true in any legal sense, even if material, that "the capital of the defendant" was contributed for the construction and equipment of the roads it was formed to build and own, rather than the leasing of the plaintiff's road. Nothing is clearer than that every dollar subscribed to the capital stock of the defendant was thereby pledged for any and all of the purposes specified in its articles, and may be applied and used, at least so far as third persons are concerned, to such of them as the directors shall determine.

In conclusion, the directors of the defendant corporation, in pursuance of the express power given them by the corporation act and the articles of incorporation, determined to take a lease of the plaintiff's road, yielding and paying a certain rent therefor, and to that end duly directed and authorized their president and secretary to sign said lease and affix the corporate seal thereto, which was done. By this means the defendant became legally bound to pay the plaintiff the rent reserved, and in default thereof the latter may maintain this action to recover the installment now due; and therefore the demurrer is overruled, and the motion to strike out is allowed, and judgment is given for the plaintiff for the sum sued for,—$68,131,—together with legal interest thereon from May 15, 1884, and the costs and disbursements of the action.