CITY OF ST. LOUIS, Respondent, *vs.* McCOY, Appellant.

1. The ordinance of the city of St. Louis prescibing that boats coming from below Memphis, having had on board, at any time during the voyage, more than a specified number of passengers, should remain in quarantine not less than forty-eight hours nor more than twenty days, is not repugnant to that clause in the constitution of the United States which reserves to congress the exclusive right to regulate commerce.

*Appeal from St. Louis Criminal Court.*

McCoy was taken before the recorder of the city of St. Louis and fined five hundred dollars, for a violation of a city ordinance establishing quarantine regulations. He appealed to the Criminal Court, where the action of the recorder was affirmed, and he appealed to this court. The violation of the ordinance was admitted, but the defendant denied the power of

the city to make such an ordinance, contending that it was repugnant to the constitution of the United States and void. The ordinance is as follows :

[No. 2775.]

An ordinance amendatory of ordinance number twenty-six hundred and seventy-one, entitled " An ordinance amendatory of ordinance number twenty-four hundred and seventeen, entitled ' An ordinance establishing a permanent quarantine for the city of St. Louis, and the rules and regulations for conducting and enforcing the same.' "

. Be it ordained by the city council of the city of St. Louis : Section 1. The first section of the ordinance to which this amendatory is hereby repealed, and the following shall stand as the first section of said ordinance : " Sec. 1. Any steamboat coming from New Orleans, or any point below the city of Memphis, having on board, on her arrival within the quarantine limits, or having had on board at any time during her voyage, a greater number of deck or steerage passengers than twenty for each hundred tons register of such steamboat, between the first of April and first of November, or a greater number than thirty per hundred tons register at any other season of the year, shall be detained at the quarantine station, for the purpose of cleansing and purification, not less than forty-eight hours, nor more than twenty days, at the discretion of the quarantine officer and the board of health : provided, however, it shall be in the power of the quarantine officer to discriminate in favor of those boats which are constructed without cabins or with only a few rooms on the upper deck, with a special view to the accommodation of a large number of steerage passengers : and in such cases, if the room thus intended for deck passengers is not occupied with freight, but is reserved for their use exclusively, fifty per cent. more passengers may be allowed than is permitted to boats not thus constructed."

Sec. 2. A third section shall be added to said ordinance, as

follows : " Sec. 3. The master of any boat landing part of his deck passengers within the quarantine limits, or at any point below, to bring his number within the regulation, and thus getting his boat by the quarantine without detention, shall, on proof of the fact before the recorder, be fined in a sum not less than one hundred nor more than five hundred dollars, and the boat may, on the order of the board of health, be forced to return to the quarantine station and remain any length of time, not exceeding twenty days. And when a boat coming from the Ohio river or elsewhere shall take passengers from a New Orleans boat for the purpose of enabling such boat to pass the quarantine, or where cholera, ship fever, small pox or any contagious or communicable disease may prevail amongst the passengers so taken from a southern boat, such Ohio river boat or other boat bringing said passengers, shall be detained at the quarantine station any number of days not exceeding twenty, at the pleasure of the board of health, and the master shall be liable to a fine of not less than one hundred nor more than five hundred dollars."

Appreved January 14, 1852.

The eighth section of an ordinance establishing a permanent quarantine for the city, provided that " the master or person in charge of any steamboat or vessel coming from the south, who shall disregard quarantine regulations, or disobey the orders of the quarantine officer, shall be subjected to a penalty of five hundred dollars."

*Blennerhassett & Shreve*, for appellant. There is no doubt that a state, in the exercise of sovereignty, possesses the power to pass quarantine laws and may delegate this power to a municipal corporation within its limits. But that is not the question here. Here is the assertion of a right to regulate and limit the number of passengers which a boat may carry. If the city can exercise this power as asserted in the ordinance, may it not limit the number of passengers to two as well as to twenty, and if it can prescribe twenty days as the period of time to undergo quarantine, can it not fix any other period, so

as to amount to an absolute prohibition. In the case of *Gibbons* v. *Ogden*, 9 Wheat., the court clearly points out the distinction between the powers reserved by the states for their safety and protection, and the powers conferred by the constitution on congress to regulate commerce. There is no difference in principle between the ordinance involved in this case, and one requiring passengers before landing in the city to pay a *per capita* tax to provide for the expenses that may be incurred in providing for their relief, if they should by sickness or otherwise become a charge on the city treasury. Could such an ordinance be sustained? It was expressly decided in the negative in the *Passenger Cases*, 7 Howard.

*C. G. Mauro*, city attorney. The power of the several states to pass quarantine and health laws, inspection laws, &c., and to make proper police regulations, is undoubted. 9 Wheat. 1, 203, 205, 235. *City of New York* v. *Miln*, 11 Pet. Rep. 102, 129, 132, 142. *License Cases*, 5 Howard, 504, 577, 589. *Passenger Cases*, 7 Howard, 283, 397, 403, 414. In the exercise of this power, the states may do many things which incidentally affect commerce. 11 Pet. 141. 16 ib. 652. 1 Hill, 469. 5 Howard, 577. The distinction between a police law and a commercial regulation is defined in the *Passenger Cases*, 7 Howard. The ordinance in question does not assume to regulate commerce. It does not limit the number of passengers a boat may bring into port, nor the amount of freight she may carry, nor impose any conditions upon which she may navigate the waters of this state. The only requisition is that, if she has on board such a number of passengers as will be dangerous to the health of the city, she shall remain outside until the danger is removed by cleansing and purification.

RYLAND, Judge, delivered the opinion of the court.

1. In this case the question which the defendant, by his counsel, raised for the adjudication of this court, does not deny the authority and power of the city to make quarantine regula-

tions, for the preservation of the health of its citizens, but, admitting that power, contends that the present regulations are unconstitutional and void. There can be no doubt that the state has, as a sovereign power, full authority to regulate its own internal police ; to make laws tending to guard and protect the inhabitants from the danger of contagious or infectious diseases. This power it can delegate in part sufficient for practical purposes to cities and corporations. This power has been delegated to the city of St. Louis, and the regulations made by the city authorities and enforced by their ordinances for the last two or three years, have been eminently preservative of the health of the city.

' When the authority to pass quarantine regulations is admitted, there is nothing left but to complain of the mode of its exercise. This is matter of expediency, not of constitutional right. The city authorities, well supposing that contagious and pestilential diseases were found more prevalent on crowded boats ; that passengers in the steerage or on deck, breathing a close and impure air, from the crowded state of the rooms, might be more likely to take disease and more likely to become infected, so as to communicate it to others, very properly took steps by their ordinances to guard against the danger, by requiring the boats from below Memphis, which thus crowded their steerage and decks, to stop at quarantine for so long a time as might be requisite for purifying and ventilation. There was no design to interfere with any regulations of commerce. There was no attempt to regulate commerce in any. manner or shape by these ordinances, nor is there any violation of the constitution of the United States in these regulations of the city. Here is no tax per head of the passengers brought on the boats, to be paid by the captains or masters of such boats, nor is there any tax on the boats for carrying over so many passengers in number on them. Nothing of this is done. Yet, to keep clear of danger from crowded boats and from the passengers thus huddled together and let loose all at once into the city, the ordinance requires all boats coming,

from below Memphis with more than twenty passengers in steerage and deck to the one hundred tons burden of such boat, to stop at quarantine for forty-eight hours, to guard against introducing into the city disease and death, or the seeds of disease and pestilence. Any boat bringing a greater number of passengers than is permitted, has but to stop and spend the allotted time at quarantine. It is for a violation of the ordinance the penalty is imposed.

In the opinion of this court, the judgment of the court below is correct, and must be affirmed, the other judges concurring.