## A. BOOTH AND COMPANY, a ·Corporation, Respondent, v. G. M. WEIGAND, Appellant.

### No. 1578.   (79 Pac. 570.)

1. **Foreign Corporations: Conditions Precedent to Doing Business: Failure to Comply: Effect on Contracts.**
A corporation is a creature of statute, possessing special statutory powers, and dependent on the statute of its creation for its existence, which does not extend beyond the limits of the creating jurisdiction.

2. **Same: Comity.**
The comity which recognizes the corporate existence of a foreign corporation, and enforces the contracts of that corporation made within the limits of the State affording the comity, will not be extended so as to recognize the exstence of a corporation and the exercise of its powers, when they are inimical to the interest, repugnant .to the policy, or in contravention of the laws of such State.

3. **Same.**
It was within the power of the State to enact Constitution article 12, sections 1, 4, 9, and Revised Statutes 1898, sections 351, 352, prescribing such terms and conditions for the tran- action of business within the State by a foreign corporation as will render such a corporation amenable to the process of the courts of this State.

4. **Same: Certain Contracts Held Void.**
Constitution article 12, section 1, provides that all corporations doing business in this· State may be regulated by law. Section 4 provides that all corporations may sue and be sued as natural persons.   Section 9 prohibits corporations from doing business in the State without .having a place of business, with an agent, upon whom process may be served, nor without first filing a certified copy of articles of incorporation with the Secretary of State. Article 1, section 26, declares all the provisions of the Constitution both mandatory

and prohibitory, when there are no express words declaring them to be otherwise. Revised Statutes 1898, section 351, requires foreign corporations to file a certified copy of their articles of incorporation with the Secretary of State, and with the county clerk of the county wherein their principal office in the State is situated, and designate persons upon whom process may be served. Section 352 provides that foreign corporations failing to comply with the provisions of section 351 shall not be entitled to the benefits of the corporation laws of the State. *Held*, that contracts of a foreign corporation made while doing business in the State, without complying with the laws of the State, respecting such corporations, are invalid, and cannot be enforced in the courts of this State by the corporation.[1]

McCARTY, J., dissenting.

(Decided December 31, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. T. D. Lewis,* Judge.

The plaintiff, a foreign corporation, brought this action to recover the value of certain goods sold and delivered to the defendant. From a judgment in favor of the plaintiff the defendant appealed.

REVERSED.

*S. P. Armstrong, Esq.,* for appellant.

Can a foreign corporation without complying with the laws of Utah, maintain an action in its courts on contracts entered into within the State, while it was engaged in a general business in disregard of its laws? This court has answered this question in the negative. "It will be conceded in the outset that, if the contract upon which the plaintiff's action was brought was made in violation of a law of the State, it cannot be enforced by any court in the State. So far as appears, plaintiff had no place of business, with an authorized agent upon whom process could be served within the State, and had

---

[1] Barse Live Stock Co. v. Range Valley Co., 16 Utah 59, 50 Pac. 630; Railroad v. Power Co., 23 Utah 22, 63 Pac. 995.

not filed a certified copy of its articles of incorporation with the secretary of state. The contract and notes upon which suit was brought were made in Kansas City, Kansas, where plaintiff conducted its business, and the notes were made payable there. The plaintiff had never done nor contemplated doing any business in this State, except in bringing this action to enforce the contract and rights sued upon. Under these circumstances, was the bringing of this action to enforce the contract and obtain the rights thereunder forbidden by the constitution and laws of this State, which provide that "no corporation shall do business in this State." etc. "In our opinion, the constitution, when reasonably construed, was intended to *prohibit* corporations from transacting their ordinary corporate business within the State without first complying with its terms," etc. Barse Co. v. Range Co., 16 Utah 64-65.

This decision considers the law as it stood January 20, 1896. At that time the only *statutory* disadvantage, from non-compliance, was that the foreign corporation should not have the benefit of the statute of limitations. Com. Laws 1888, sec. 2293.

But the Constitution provides that, "no corporations organized outside of this State shall be allowed to transact business within the State on conditions more favorable than those prescribed by law to similar corporations organized under the laws of this State." Art. XII. sec. 6. And *"No corporation shall do business in this State,* without having one or more places of business, with an authorized agent or agents, upon whom process may be served; *nor without first filing a certified copy of its articles of incorporation with the Secretary of State."* Art. XII, sec. 9.

This court treated the provisions of the constitution as self executing, and hence says that "It will be conceded" that a contract made in violation of these provisions will not be enforced. That is, a contract made in Utah, by a foreign corporation doing business therein without complying with its laws, will not be en-

forced. Barse Co. v. Range Co., 16 Utah 64, After the case of Barse Co. v. Range Co., was begun an act was approved to take effect April 4, 1896, among other things providing that "All corporations, not organized under the laws of this State, *before doing business* within the State, *shall file,* etc., . . . and shall also *before doing business* within the State, by resolution, etc., *accept the provisions of the Constitution* of this State, *and also designate some person,* etc. . . . Any such corporation *failing to comply* with the provisions of this section, *shall not be entitled to the benefits of the laws* of the State relating to corporations." Laws 1896, page 308, sec. 2293.

Among the "benefits" conferred upon corporations are the rights to contract and to sue. "The corporation in its name shall have power to make all contracts necessary and proper to effect its purposes and conduct its authorized business, to sue and be sued, etc." Laws 1903, p. 78; Rev. Stat., sec. 322; Com. Laws 1888, sec. 2272.

In the revision of the statutes, 1898, the following clause was added to the Act of April 4, 1896, above quoted: "And any person acting as agent of a foreign corporation which shall neglect, etc., shall be deemed guilty of a misdemeanor, and shall be personally liable on any contracts made in this State by him for and in behalf of such corporation during the time that it shall remain so in default; provided, etc." Rev. Stat., sec. 352.

This court considered these statutory provisions, and says: They "expressly embody these provisions of the Constitution, and *prohibit* foreign corporations from doing business in this State, unless they have complied with these requirements of the law; and any corporation failing to so comply with the provisions of the law is not entitled to the benefits of the law of this State relating to corporations." "The appellant corporation did not comply with the laws of this State, and has no power to engage in its business of mining, or to

acquire any water rights under the laws of this State."
Having failed to comply with its laws, "the defendant
corporation, therefore, is not entitled to the benefit of
the laws of this State, with reference to corporations."
Railroad v. Power Co., 23 Utah 38-39.

Power of the State to restrict foreign corporations.

The State can put any restriction or condition on
a foreign corporation doing business within its terri-
tory, except that it must not interefere with Federal
corporations, or with corporations in so far as they are
engaged in interstate commerce, the sale of patented ar-
ticles or business for the United States. Mining Co. v.
Pennsylvania, 125 U. S. 181, 190; Paul v. Virginia, 8
Wall. 168, 181; Cooper v. Ferguson, 113 U. S. 727; St.
Clair v. Cox, 106 U. S. 356; Ry. v. Gebhard, 109 U. S.
537; Ry. v. Koontz, 104 U. S. 11.

Plaintiff was doing a general mercantile business
at its storeroom in Salt Lake City from which the goods
were sold and delivered and hence the case does not
come within any of the exceptions. Hynes v. Briggs,
41 Fed. 470; Robbins v. Taxing Dist., 120 U. S. 489,
500; Brown v. Houston, 114 U. S. 622, 635.

A corporation having failed to comply with the
laws of Utah cannot sue in its courts. Where the for-
eign corporation conducts a local business, it comes
within the prohibition of the local laws, and it cannot
sue until it complies therewith. Crefeld Mills v. God-
dard, 69 Fed. 141, 149; Barse Co. v. Range Co., 16
Utah 65; Smith v. Alberta Co., 74 Pac. 1073 (Idaho);
Carey-Lombard v. Thomas, 22 S. W. 745, (Tenn.)

The contracts sued upon are void. This action is
based on contracts made in violation of the Utah Consti-
tution and Statutes. "Whenever a contract is prohib-
ited, whether expressly or by implication, it is illegal,
and cannot be enforced. Of this there is no doubt."
The propositions that seem fairly deducible from the
foregoing authorities are the following: First. That
where a contract is prohibited by statute, it is immater-
ial to inquire whether the statute was passed for reve-
nue purposes only, or for any other object. It is enough

that parliament has prohibited it, and it is therefore void." Benj. Sales (3d Ed.), secs. 694, 702; (7 Ed.), secs. 530, 538; 2 Add. Cont. 1147 (8 Ed.); 2 Chitty Cont. 1003 (11th Am. Ed.), (7th Ed.), 694-7; Smith, Cont., (5 Ed.), 241; Miller v. Ammon, 125 U. S. 426-7; Stevenson v. Ewing, 9 S. W. 230 (Tenn.); Woods v. Armstrong, 25 Am. R. 671, 674.

Where the payment of a tax is a condition to the right to carry on a business, "in such case the business carried on without a license will be illegal, and no recovery can be had upon contracts made in the course of it." Cooley, Taxation (2 Ed.), 572; Bish., Contracts, sec. 547; Sellers v. Phillips, 37 Ill. App. 74.

The courts have applied this general principle of law, familiar alike in England and America, to contracts made by foreign corporations doing business without complying with the law of the state into which they have come. These decisions have established the rule that, unless there is something in the statute from which the lawmakers may be presumed to limit its scope to some other consequences, its contracts will be void and unenforcible by the noncomplying corporation. Cooper v. Ferguson, 113 U. S. 727; Utley v. Clark-Gardner, 4 Colo. 369, 372; Cin. Mut. Co. v. Rosenthall, 55 Ill. 85, 90, 93; Thomas v. Ins Co., 21 Am. Rep. 89, 92, 80 Pa. St. 15; Electric Co. v. Perry (R. I.), 75 Fed. 898-9; Carey-Lombard Co. v. Thomas, 92 Tenn. 596; Williams v. Mining Co., (Cal.), 96 Fed. 454, 463; Re Comstock, 3 Sawyer 227 (Or.); McCanna v. Trust Co., 76 Fed. 421; Pennington v. Townsend, 7 Wend. (N. Y.), 279-80; Barber v. Boehm, 21 Nebr. 450; DeGroot v. Van Dusen 20 Wend. 393; Dobsen v. Hope, 7 Kans. 165; Williams v. Cheny, 3 Gray 222; Ins. Co. v. Chamberlain, 16 Gray 165; Gilchrist v. Ry., (Mont.), 47 Fed. 593; Flosheim v. Lester, 46 Am. St. 161, 60 Ark. 120; Dundee v. Nixon, 10 So. 311, 95 Ala. 318; B. & L. Ass'n v. Cannon, (Tenn.) 41 S. W. 1054; Hachney v. Leary, 12 Or. 45; Semple v. Bank, 5 Sawyer 91-2-3; Nelms v. Mtg. Co., 92 Ala. 159; Farrier v. Mtg. Co., 88 Ala. 277, 279;

Christian v. Mtg. Co., 89 Ala. 198, 200; Ins. Co. v. Wright, 55 Vt. 531.

*W. R. Hutchinson, Esq.,* for respondent.

The right of the respondent to maintain its action against the appellant is authorized by the Constitution of the State of Utah. See Article 12, section 4-6. The appellant refers in his brief to section 351 of the Utah Code, and sec. 9, article 12, Constitution of Utah, and claims that foreign corporations are prohibited from making contracts in this state, and from enforcing their contracts so made in the courts of this State.

The purpose and effect of section 351-2 of Utah Code are solely to obtain a revenue for the State, and to compel foreign corporations to comply with certain specific requirements, the sole and only purpose is to increase its revenues and to not permit foreign corporations to exercise any greater privileges than those organized under the laws of this State.

This construction of the statute is in harmony with section 6, article 12, of the Constitution, wherein it stated, "No corporations organized outside this state shall be allowed to transact business within the state on conditions more favorable than those prescribed by law to similar corporations organized under the laws of this State." The Legislature of the State of Utah has the power to impose conditions upon foreign corporations doing business, but it has not the power to take from or add to any legal right which a foreign corporation possesses by reason of its creation under the laws of a foreign state.

In the case of Bedford v. Loan Ass'n., 181 U. S. 241, the court said: "We recognize the power of the State to impose conditions upon a foreign corporation doing business in the State. We have examined the existence of this power many times, but manifestly it cannot be exercised to discharge a citizen of the State from their contract obligations." See also Thompson in his

Commentaries on the Law of Corporations, vol. 6, 7479: "There are numerous authorities to the effect that although a foreign corporation may have neglected to comply with the provisions of the domestic statutes prescribing the terms and conditions upon which it may enter the domestic field for the purpose of doing business therein, yet it nevertheless does not forfeit the general right of action in the courts of the state which is conceded alike to non-resident persons and corporations." In support of the foregoing doctrine the following cases are cited. Whitely v. Mining Co., 4 Colo. 369; Charleston v. Gas & Mining Co., 11 Colo. 419; Smith v. Little, 67 Ind. 549; Thompson on Corporations, sec. 7978.

If the statute imposing conditions upon foreign corporations expressly declare that no suit shall be brought on a contract or obligation made in violation thereof, there can be no room for any other construction than that the contract will be void so far as the right of the corporation to enforce it is concerned. Werten P. B. Co. v. Johnson, 38 S. W. Rep., 364; 42 S. W. Rep., 320; 98 Tex., 92; Bank v. Young, 37 Mo. 398.

There is no prohibitory enactment either in the Constitution or the statutory laws of the State of Utah, which prohibits the bringing of an action in the courts of this State by a foreign corporation for any cause whatsoever.

In 1894 the State of Washington passed a statute which is found in paragraphs 1524-31 of the general statutes of that state, which requires a foreign corporation to comply with certain requisites before doing business in the state, and provides that an agent of such corporation doing business therein before the requisites are complied with shall be guilty of a misdemeanor. The Supreme Court of the State of Washington has held in the case of the L. F. Fire Engine Co. v. Town of Mt. Vernon, 9 Wash. 142, 37 Pac. 287, "That a person contracting with a foreign corporation who has failed to comply with the state statute is estopped to deny the au-

thority of the corporation to make the contract, and is estopped to deny the capacity of the corporation to sue thereon.'' Rathbone-Sard & Co. v. Frost, 9 Wash., 162, 37 Pac. 298; Holmes v. Barnard, 15 Weekly Notes 110; Killgore v. Smith, 122 Pa. St. 48; Watt-Campbell Co. v. Youngling, 51 Hun 302; Newberg Petroleum Co. v. Weare, 27 Oh. St. 343; Augusta v. Earle, 38 U. S. 519.

The decided weight of authorities is that where the Legislature has not expressly declared that this result shall follow from a failure to comply with the statute, the courts ought not to imply such a result unless this be necessary in order to attain the primary object for which the statute was enacted. Upon this ground it has been held that a contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business, will not on that account be held absolutely void, unless the statute expressly so declares it; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequistes, such penalty will be deemed exclusive of all others. Engine Co. v. Walsh, 18 Mo. 229; Insurance Co. v. McMillan, 246 Pa. St. 67; Ehrman v. Insurance Co., 1 McCrary 123, 1 Fed. Rep. 471; Insurance Co. v. Salt Co., 31 Mich. 346; Insurance Co. v. Matthews, 102 Mass. 221.

Transacting business in the State without complying with the statutory conditions is a usurpation of power by the corporation, but with the State rests the right to elect whether it will acquiesce in such usurpation, or dispute and prevent it. This is the rule in respect to a domestic corporation, certainly where it is conceded there was legal authority for its creation. Ang. & A. Corp., page 94, 636; Lehman v. Warner, 61 Ala. 455; Cochran v. Arnold, 58 Pa. St. 399; North v. State, 107 Ind. 356.

BARTCH, J.—The plaintiff, a foreign corporation incorporated and existing by virtue of the laws of the state of Illinois, and doing business in that state and in Utah, brought this action to recover the value of mer-

-chandise sold and delivered to the defendant. The complaint is in the usual form, and contains three causes of action. The defendant demurred to the complaint upon the ground, among others, that the plaintiff had not the legal capacity to sue, being a foreign corporation, and not having complied with the laws of this state. The demurrer was overruled, and thereupon the defendant filed an answer alleging, inter alia, that the plaintiff had not legal capacity to sue, because it is a foreign corporation, and is maintaining an office and storeroom and doing a general mercantile business in Salt Lake City, buying and selling at retail; that it has not filed a copy of its articles of incorporation with the Secretary of State or the county clerk, and that it has failed to designate an agent upon whom process may be served, and has not accepted the provisions of the Constitution of Utah, and has wholly failed to comply with the provisions of the Revised Statutes and of the Constitution relating to foreign corporations; that, by reason of such failure to comply with the laws of Utah, plaintiff was unlawfully engaged in and doing an unlawful business; and that, as a consequence, the contracts, assignments of accounts, and transactions sued on are illegal and void. To this a demurrer was interposed and sustained and, the defendant electing to stand on his answer, judgment was entered in favor of the plaintiff. The decisive question presented upon this appeal is whether the contracts of a foreign corporation, made while doing business in this State, without complying with our laws relating to such corporations, are valid and can be enforced in the courts of this state by the corporation. The appellant insists that under our Constitution and statutes, and the facts admitted in this case, such a question must be answered in the negative.

The Constitution, so far as material here, provides, in section 1, art. 12, that "all corporations doing business in this state, may, as to such business, be regulated, limited or restrained by law;" and in section 4, Id., that "all corporations shall have the right to sue, and

shall be subject to be sued, in all courts in like cases as natural persons.'' Section 6, same article provides.. ''No corporations organized outside of this State, shall be allowed to transact business within the State on conditions more favorable than those prescribed by law to similar corporations organized under the laws of this State.'' Section 9 of the same article reads: ''No corporation shall do business in this State, without having one or more places of business, with an authorized agent or agents, upon whom process may be served; nor without first filing a certified copy of its articles of incorporation with the Secretary of State.'' All of the provisions of the Constitution are both ''mandatory and prohibitory,'' because there are no ''express words'' which declare them to be otherwise. Section 26 art. 1, Const. On this subject, section 351, Rev. St. 1898, provides: ''All corporations, not organized under the laws of this State, before doing business within the state shall file with the Secretary of State and with the county clerk of the county wherein their principal office in the state is situated, a certified copy of their articles of agreement, certificate of incorporation, and by-laws and in case of alteration or amendment of said articles of incorporation or by-laws, shall file certified copies of such alterations or amendments with each of said officers, and shall also, before doing business within the State, by resolution of their board of directors, accept the provisions of the Constitution of this State, and also designate some person residing in the county in which its principal place of business in the state is situated, upon whom process issued by authority of or under any law of the State may be served. A copy of such resolution shall be certified by the president and secretary, under seal of the company, and filed in the office of the Secretary of State and in the office of the county clerk of the county in which its principal office is situated.'' Here are express provisions of statute requiring certain things to be done before a foreign corporation can legitimately transact business within

this State, and these provisions are in terms mandatory and prohibitory, and in entire harmony with the provisions of the Constitution relating to such corporations. For the evident purpose of compelling a compliance with these laws by foreign corporations before attempting to transact business in this state, the Legislature, in section 352, Rev. St. 1898, further provided: "Any such corporation failing to comply with the provisions of the foregoing section shall not be entitled to the benefits of the laws of this state relating to corporations; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions, shall be deemed guilty of a misdemeanor, and shall be personally liable on any and all contracts made in this State by him for and in behalf of such company during the time that it shall remain so in default; provided, that this section shall not be held to apply to persons acting as agents for foreign corporations for a special or temporary purpose or for a purpose not within the ordinary business of such corporation, nor shall it apply to attorneys-at-law as such." This section, as will be observed, is also in its terms mandatory and prohibitory, and fixes certain penalties for a failure on the part of foreign corporations to comply with the provisions of the preceding section. The first penalty is directed against the corporation itself which has failed to comply with the laws in question, and that is that such corporation "shall not be entitled to the benefits of the laws of this State relating to corporations;" and then there are further penalties provided as a punishment for any agent who acts for such corporation which has failed to comply with the provisions contained in the preceding section.

These several constitutional and statutory provisions are in harmony with each other, and, undoubtedly, were enacted for the purpose of placing foreign corporations which would comply with such provisions upon the same plane, in the transaction of corporate business in this State, as domestic corporations. The principal

terms and conditions prescribed are that the foreign corporation shall file certain evidence of its corporate existence, designate its principal place of business within this State, and appoint an agent, at such place of business, upon whom process may be served. Such terms and conditions are reasonable, and were doubtless prescribed to protect the citizens of the State in their dealings with such corporations from the hardships and inconveniences which might otherwise be entailed upon them by being compelled to pursue their rights in other jurisdictions. That the State has a right to impose such terms upon such corporations, as conditions precedent to their right to carry on corporate business within its limits, we entertain no doubt. A corporation is a creature of statute—of local laws—and, except for such laws, it would have no existence. The grant of its corporate existence is a grant of special powers and privileges to its incorporators to pursue the objects of its creation, and transact its corporate business the same as an individual transacts his private business. The persons who compose the legal entity, generally, so far as ordinary trading, manufacturing, and mining corporations are concerned, are not responsible individually for the corporate debts. A corporation being such a creature of local laws, it has no legal existence without the limits of the jurisdiction which created it. "It exists only in contemplation of law, and by force of the law; and where the law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty." Bank of Augusta v. Earle, 13 Pet. 588, 10 L. Ed. 274. In these respects a corporation is not like an individual, who exists because of the laws of God, our Creator, and may reside in one State or country and do business and make valid contracts in another. The corporation is endowed, with no natural attributes, but has only such powers as are conferred upon it by its charter and laws of its creation, and one

state or country can make no laws nor create any corporation for another, although the corporate existence of a corporation may be recognized by another State, and its contracts made therein enforced by the comity of the State. Comity, however, will not be extended by States to such an extent as to recognize the existence of a corporation and the exercise of its powers when the same are inimical to their interest, repugnant to their policy, or contravene their laws. "Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." Paul v. Virginia, 8 Wall. 168, 181, 19 L. Ed. 357. In Pembina Min. Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650, it was said: "The State is not prohibited from discriminating in the privileges it may grant to foreign corporations as a condition of their doing business or hiring offices within its limits, provided always such discrimination does not interfere with any transaction by such corporations of interstate or foreign commerce. It is not every corporation, lawful in the state of its creation, that other States may be willing to admit within their jurisdiction, or consent that it may have offices in them; such, for example, as a corporation for lotteries. And, even where the business of a foreign corporation is not unlawful in other States the latter may wish to limit the number of such corporations, or to subject their business to such control as would be in accordance with the policy governing domestic corporations of a similar character."

This jurisdiction, therefore, had the absolute right

28 Utah—25

to prescribe, as it did in the foregoing constitutional and statutory provisions, such terms and conditions upon which a foreign corporation might do business here, as would put the corporation in a position to be amenable to the process of the courts of this State. When, therefore, the plaintiff corporation established a place of business and commenced to "do business" in this State, it was bound to recognize our laws and their mandatory and prohibitory character, especially of the Constitution. Having failed to do this, and having proceeded in violation of such laws to exercise its corporate powers, its contracts cannot be enforced by the corporation in our courts. The force of this position was clearly recognized by this court in Barse Live Stock Co. v. Range Valley Cattle Co., 16 Utah 59, 50 Pac. 630, where it was said: "It will be conceded in the outset that, if the contract upon which the plaintiff's action was brought was made in violation of a law of the state, it cannot be enforced by any court in the State." In Thorne v. Travellers' Ins. Co., 80 Pa. 15, 21 Am. Rep. 89, it was said: "There can be no doubt of the constitutional power of the Legislature to prescribe the conditions under which a foreign corporation shall transact business in this State, and the manner in which its agents shall be qualified before entering on their duties. It has often been held that an action founded on a transaction prohibited by statute cannot be maintained, although a penalty be imposed for violating the law, and it be not expressly declared that the contract be void." So, in Cincinnati Mut. H. A. Co. v. Rosenthal, 55 Ill. 85, 8 Am. Rep. 626, it was said: "When the Legislature prohibits an act, or declares that it shall be unlawful to perform it, every rule of interpretation must say that the Legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void. To hold otherwise would be to give the person or corporation or individual the same

rights in enforcing prohibited contracts as the good citizen who respects and conforms to the law. To permit such contracts to be enforced, if not offering a premium to violate a law, it certainly withdraws a large portion of the fear that deters men from defying the law. To do so, places the persons who violates the law on an equal footing with those who strictly observe its requirements. That this contract is absolutely void as to appellee we entertain no doubt." Likewise in Re Comstock, 3 Sawy. 218, Fed. Cas. No. 3,078, it was stated. "This foreign corporation having no power to do business in this State except by the consent of the State, and consent having been given upon a condition precedent which was never performed, the power to make this contract was never in the corporation. So far as it was concerned, the act was ultra vires," 6 Thomp., Corp., secs. 7959-7960; 2 Morawetz, Priv. Corp., sections 662-666; Railroad v. Power Co., 23 Utah, 22, 63 Pac. 995; Cary-Lombard L. Co. v. Thomas, 92 Tenn. 587, 22 S. W. 743; Dudley v. Collier, 87 Ala. 431, 6 South. 304, 13 Am. St. Rep. 55; Webb v. Alexander, 7 Wend. 281; Smith v. Alberta (Idaho), 74 Pac. 1071; Farrior v. New Eng. M. S. Co., 88 Ala. 275, 7 South. 200; Stevenson v. Ewing (Tenn.), 9 S. W. 230; Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759; Cooper M. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Electric N. & M. T. Co. v. Perry (C. C.) 75 Fed. 898; Crefeld Mills v. Goddard, (C. C.), 69 Fed. 141.

It must be conceded that the authorities as to the question herein presented and considered are in conflict and irreconcilable, but we are of the opinion that the conclusion reached is inevitable under the mandatory and prohibitory character of our constitutional and statutory provisions, and that the court erred in sustaining the demurrer to the answer.

The judgment must be reversed, with costs, and the case remanded for further proceedings in accordance herewith. It is so ordered.

BASKIN, C. J., concurs.

· McCARTY, J. (dissenting). The complaint in this case contains three causes of action. The first cause of action is to recover from defendant the sum of $63.54, alleged to be due plaintiff corporation for goods and merchandise sold by it to defendant; the second cause of action is to recover upon an assigned account for merchandise sold and delivered by the Cudahy Packing Company, a corporation, to the defendant, in the sum of $85.70, and which account, it is alleged, was duly assigned to plaintiff; and the third cause of action is upon an account for merchandise sold by E. G. Hines, doing business as the Hines Mercantile & Commission Company, to the defendant, in the sum of $445.95, which account, it is alleged, was duly assigned to plaintiff. Defendant answered, alleging, first, that plaintiff had not legal capacity to sue, because it had not complied with certain provisions of the statutes and the State Constitution which prescribe certain conditions upon which foreign corporations may do business in this State; and, second, that the contract mentioned in the first cause of action and the assignments of the accounts mentioned in the second and third causes of action were null and void, for the same reasons alleged in his plea "that plaintiff had not legal capacity to sue." To this answer a demurrer was interposed and sustained. It is to review the action of the trial court in overruling defendant's demurrer that this appeal is taken.

The first question presented is, did plaintiff have legal capacity to sue? Section 4, art. 12, Const., provides, so far as material here, that "all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons." Now, it must be conceded that unless the right thus given "all corporations to sue" by the foregoing mandatory provision of the Constitution is made conditional and depends upon the doing of certain things before such right can be exercised, or is limited to domestic corporations by some other provision of the Constitution, plaintiff's right to sue in the courts of this State

is coextensive with that of domestic corporations and of natural persons. Defendant contends that section 9, art. 12, Const., imposes upon foreign corporations certain conditions that must be complied with before they can legally bring and maintain suits in the courts of this State. This section of the Constitution provides that "no corporation shall do business in this State without having one or more places of business, with an authorized agent or agents, upon whom process may be served, nor without first filing a certified copy of its articles of incorporation with the Secretary of State." Now, it is plain that neither of these sections (4 and 9) of the Constitution modifies or in any way limits the terms of the other, but that they refer to two different subjects. Section 4 refers to the right of "all corporations," which, of course, includes foreign corporations, to sue in the courts of this State, while section 9 declares what foreign corporations shall do before they shall be entitled to do business in this State. The term "business," as used in section 9, has been construed to mean the general transaction or prosecution of the ordinary business of corporations. In the case of Utley et al. v. Mining Co., 4 Colo. 373, this same question was involved and the court, in construing constitutional and statutory provisions of Colorado similar to those now under consideration, said: "The prohibition extends to doing business before compliance with the terms of the statute. We do not think this an abridgment of the right of a foreign corporation to sue. It extends only to the exercise of the powers by which it may be said to ordinarily transact or carry on its business." 6 Thomp. Corp., 7936; 2 Morawetz, Corp., 662; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; W. A. Wood M. Co., etc., v. Caldwell, 54 Ind. 280, 23 Am. Rep. 641; Barse Live Stock Co. v. Range Valley Cattle Co., 16 Utah 59, 50 Pac. 630. Whatever room for doubt there may be as to the validity of contracts entered into in this State by foreign corporations which have failed to comply with the constitutional and stat-

utory requirements referred to in the opinion written
by Mr. Justice BARTCH, there can be no question but
what they have the right to sue in the courts of this
State, and that, too, without any restrictions, limita-
tions, or conditions other than those imposed by law
upon domestic corporations and citizens of the State.
To hold otherwise, and thus close the doors of our
courts to foreign corporations doing business within
the State, and which have failed to comply with the
terms of section 9, art. 12, Const., and the statutes re-
lating to the same subject-matter, would subject their
property within the state to confiscation, and, no matter
haw high-handed and lawless the proceedings might be
by which corporations were deprived of their property,
they would have no redress. And my attention has not
been called to a decision, neither have I been able to
find one, that has gone to this extreme, unless it be the
opinion written by Mr. Justice BARTCH in this case.
Mr. Thompson, in his work on Corporations, section
7979, vol. 6, after discussing the question of a foreign
corporation's right to sue on one of its own contracts of
the kind in question in the courts of the State where the
contract is entered into, says: "Outside of that ques-
tion, there is a mass of authority to the effect that al-
though a foreign corporation may have neglected to
comply with the provisions of the domestic statutes pre-
scribing the terms and conditions upon which it may en-
ter the domestic state for the purpose of doing business
therein, yet it nevertheless does not forfeit the general
right of action in the courts of the State, which is con-
ceded alike to nonresident persons and corporations.
The meaning of the rule is that a foreign corporation is
not, by reason of its failure to comply with such a stat-
ute, to be outlawed. It may still bring an action to re-
cover possession of its real or personal property. It is
a just conclusion that the failure of a foreign corpora-
tion to comply with a local statute, as, for instance, to
file its articles of incorporation in the county where it
has property, does not entitle the domestic citizens or

others to confiscate such property." A corporation being a creature of the statute, I do not question the power and right of a State, either by its Constitution, and, in the absence of constitutional prohibition, by statute, to place upon corporations, both domestic and foreign, such limitations and restrictions as the law-making power deems proper, even to closing the doors of the courts against them. In this State however, nothing of the kind has been attempted. Section 1, art. 12, Const., provides as follows: "All laws relating to corporations may be altered, amended or repealed by the Legislature, and all corporations doing business in this State may as to such business be regulated, limited, or restrained by law." The Legislature is empowered by this provision of the Constitution to regulate and limit the business in which a corporation may be engaged, or to prohibit altogether the carrying on of such business, but nowhere is it provided in the Constitution that the Legislature may deprive a corporation, either domestic or foreign, of its capacity to sue, which is expressly conferred by section 4, art. 12, of the Constitution. Neither has the Legislature, either expressly or by implication, attempted in any way to destroy or even abridge this right. Section 351, Rev. St. 1898, provides that all corporations not organized under the laws of this State shall do certain things and perform certain acts therein enumerated, and section 352 prescribes the penalties that may be imposed and the privileges withheld in case of failure to do the things and perform the acts therein mentioned, and are as follows: "Any corporation failing to comply with the foregoing section (351) shall not be entitled to the benefits of the laws of this State relating to corporations. and every person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions shall be deemed guilty of a misdemeanor, and shall be personally liable on any and all contracts made in this state by him for and on behalf of such company during the time that it shall remain so in default."

Nowhere in the statute is there a provision which even suggests that the Legislature intended under any circumstances to deprive foreign corporations of their capacity to sue in the courts of this State, or to give to section 4, art. 12. Const., a different meaning than that for which I am now contending. It is a familiar rule that, when a statutory or constitutional provision relating to a certain subject is clear, definite, and intelligible, courts will follow the plain meaning of such provision and be governed thereby, as there is nothing to construe where the language used is unambiguous and free from doubt. In 8 Cyc. 733, it is said: ''In all cases where the meaning upon the face of the instrument is clear and unambiguous, the question is not what was the intention of its framers, but what is the meaning of the language they have used.'' And again: ''And this meaning, when so ascertained, must be taken as the authoritative rule. There is no occasion for construction, and none is allowable.'' In Suth., Stat. Const., 337, the author says: ''The Legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself, or in connection with other statutes pertaining to the same subject, is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms.'' Black, Int. of Law, 15; 6 Am. & Eng. Ency. Law (2d Ed.), 922. Applying this rule to the provisions of the Constitution under consideration, we find that the right is given ''all corporations to sue . . . in all courts in like cases as natural persons'' by section 4, art. 12, and, as I have hereinbefore stated, this right is not limited or made conditional by any of the other provisions.

As to whether contracts entered into by foreign corporations while doing business in this state without first having complied with the conditions imposed by section 9, art. 12, Const., and section 351, Rev. St. 1898, can be

enforced in the courts of this State, presents a much more doubtful question than the one just discussed. This question has been before the courts of many of the States, and there appears to be an irreconcilable conflict in the authorities respecting the validity of such contracts. In some jurisdictions they are held to be null and void, while in other States contracts thus entered into are held not to be necessarily void because of the failure of a foreign corporation making them to comply with the conditions, imposed by law upon such corporation, which entitle it to do business in the commonwealth where the contracts are made. There is a marked distinction, which is recognized in these States, between a law, the object of which is to restrict and regulate a certain line of business, which without such restriction and regulation might prove inimical and harmful to society, and a law that is directed against and operates upon a corporation only, regardless of the business in which it is engaged. In the one case it is the business at which the statute is aimed, and it has been almost uniformly held that a contract made in violation of such a statute can not be enforced. While, on the other hand, the statute being directed against the corporations, and not against the business in which they may be engaged, contracts otherwise legal, made by foreign corporations without having complied with the statute, are held to be valid unless the statute expressly declares such contracts to be void, in which case, of course, they could not be enforced. Mr. Sutherland, in his work on Statutory Construction, 336, says. "When a statute is for revenue purposes, as is a regulation, whether a contract which violates the statute shall be treated as wholly void will depend on the intention expressed in the particular statute. Unless the contrary intention is manifest, the contract will be valid." Vermont Loan & Trust Co. v. Hoffman (Idaho), 49 Pac. 314, 37 L. R. A. 509, 95 Am. St. Rep. 186; 6 Thomp. Corp. 7957, and cases cited. Now, there is no claim or pretense that the business in which plaintiff was engaged is unlawful,

or in any way detrimental to the public interest, or that it is of such a character that the welfare of the public demands that the same be restricted and put under police regulation; nor is it contended that such is the intent of the constitutional and statutory provisions under consideration, but it is admitted that their scope and purpose is to subject foreign corporations to the same rules and regulations in the transaction of business that are imposed by law upon domestic corportions, and to make them amenable to the process of the State courts. Section 352, Revised Statutes 1898, provides that any foreign corporation failing to comply with the provisions of section 351 shall not be entitled to the benefits of the laws of this State relating to corporations; that is, they could not avail themselves of the right to invoke the law of eminent domain, could not obtain franchises, and would be denied all other special privileges of which corporations may generally avail themselves. And it is further provided that any person acting as agent for a foreign corporation which shall neglect or refuse to comply with the provisions of section 351, Revised Statutes 1898, shall be deemed guilty of a misdemeanor, and shall be personally liable on any and all contracts made for and in behalf of such corporation during the time it shall remain in default. Now, the Legislature has acted on this matter, and by section 352 has declared what privileges shall be denied, obligations created, and the penalties that may be inflicted in case foreign corporations engage in business in this State without having complied with the laws relating to such corporations. And it is to be presumed that the Legislature deemed these a sufficient punishment for the violation of the statute referred to, otherwise additional punishments and forfeitures would have been provided for. Fritts v. Palmer, 132 U. S. 289, 10 Sup. Ct. 93, 33 L. Ed. 317; Kindel v. Lithographing Co., 19 Colo. 310, 35 Pac. 538, 24 L. R. A. 311; Northwestern Mut. Life Ins. Co. v. Overholt, 4 Dill. 287, Fed. Cas. No. 10,338; Insurance Co. v. Walsh, 18 Mo. 238; 2 Morawetz, Priv. Cor. 665,

666; Insurance Co. v. Matthews, 102 Mass. 224; Lumber Co. v. Thomas (W. Va.), 11 S. E. 37, 25 Am. St. Rep. 925. There can be no question but what the withholding from foreign corporations failing to comply with the laws of the State the privileges mentioned in section 352, Revised Statutes 1898, and the enforcement of the penal provisions of said section with the same promptness and vigor that other penal statutes are usually enforced, would insure a strict compliance with the provisions of the Constitution and statutes under consideration by all foreign corporations doing business in this State.

It is admitted that defendant received from plaintiff goods and merchandise of the value of $85.70, with at least an implied promise that he, defendant, would in the usual course of business pay the debt created thereby. This he refused to do. He does not claim that the transaction by which the debt was created is tainted with fraud, or that the business is one that is restricted or prohibited by law, but his sole defense is that plaintiff was incapacited to make the contract for reasons hereinbefore stated, and that therefore he is relieved from paying an honest obligation, and that this court, by a strained construction of the statute behind which he is attempting to shield himself, ought to so hold. While courts can not disregard the plain meaning of a statute, or depart from it because its enforcement in accordance with its terms and intent would result in hardship and inconvenience, yet where a statute is susceptible of two different constructions, one of which, if followed, would lead to an absurdity or manifest injustice, and the other, if adopted, would make the statute consistent with reason and justice, the latter will be acccepted by the courts as the one intended by the Legislature. "On the general principle of avoiding injustice and absurdity, any construction should be rejected, if escape from it were possible, which enabled a person to defeat or impair the obligation of his contract by his own act, or otherwise to

profit by his own wrong." Black, Interp. of Laws, 100; Sutherland, Stat. Const. 372. That the statutory and constitutional provision under consideration are susceptible of two different constructions in determining the validity of contracts, such as the one now before us, is evident from the many conflicting decisions which have been rendered in the different States on this question in construing similar statutes. Mr. Thompson, in his work on Corporations, volume 6, 7955, in discussing that line of decisions which hold that contracts similar to the one under consideration are void, says: "It can not escape attention that these decisions ignore the distinction, often taken by enlightened courts in respect of the validity of contracts, between contracts which are merely *malum prohibitum* and contracts which are *malum in se*. Such decisions put the contracts under consideration, although perfectly innocent and meritorious in themselves, on the footing of contracts which are essentially criminal, corrupt, or fraught with moral turpitude, or otherwise opposed to the public policy of the State. In leveling such contracts to the ground, and in allowing their own citizens to repudiate them on such a plea while keeping the consideration, the courts degrade the commercial morals of the people, encourage general dishonesty, expel capital from the State, and bring its judiciary into deserved disrepute." And again, in referring to this same question he says: "The spectacle of the demoralization produced by judicial decisions which uphold the citizens of the State in repudiating their honest engagements with foreign corporations on grounds having no relation to the merits of these engagements was evidently the circumstance which drove the Supreme Court of Indiana to a reconsideration of this question."

Appellant cites and relies upon the case of Barse Live Stock Co. v. Range Valley Cattle Co., supra, in support of his contention that the contract in question can not be enforced. This court, in that case, speak-

ing through Mr. Justice Miner, said: "It will be conceded in the outset that, if the contract upon which the plaintiff's action is brought was made in violation of a law of the State, it can not be enforced by any court in the State." But the court held in that case, and properly so, that the plaintiff, at the time the contract was made, was not doing business in this State, as contemplated by the provisions of the Constitution and statute in question. Therefore, the court having held that the plaintiff in that case was not doing business in this State, the question involved in the foregoing declaration of the court was eliminated from the case, and was no longer a live issue; hence, while the expression of the court referred to is entitled to respectful consideration, it can not be regarded as a precedent by which this and other courts of this State must be bound.

The second and third causes of action are based upon contracts which were assigned to plaintiff. The legality of the transactions by which these obligations were incurred on the part of defendant is not questioned, but it is insisted that the assignments by which plaintiff became the owner of them are illegal and void because of its failure to comply with the requirements of the constitutional and statutory provisions referred to. It being admitted that these contracts were legal and binding as between plaintiff's assignors and defendant, it necessarily follows that plaintiff is entitled to recover on them, unless this court holds that plaintiff is worse than outlawed in this State, which appears to be the import of the prevailing opinion written by Mr. Justice BARTCH in this case, and, in the language of Chief Justice Taney, in the celebrated Dred Scott decision (Dred Scott v. Sandford, 19 How. 407, 15 L. Ed. 691), has no rights which a white man is bound to respect; which rule, applied to this case, includes all persons, both natural and artificial.

I am unable to concur with my Brethren in the conclusions reached by them, as I am of the opinion that

the judgment of the district court should be affirmed,. and, for the reasons herein stated, dissent therefrom.